**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES AVERY CRAFTSMAN, INC., | |
| Plaintiff, | Case No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | |
| Defendants. | |

## COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

1.      Plaintiff James Avery Craftsman, Inc. ("Plaintiff" or "James Avery") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

2.      The Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the matter in question arises under the laws of the United States, namely the Copyright Act (17 U.S.C. § 101 *et seq*.) and 28 U.S.C. § 1338(a) because the matter in question concerns copyright claims arising under an Act of Congress, namely the Copyright Act.

3.      The Court further has subject matter jurisdiction over the claims arising from violations of the National Gold and Silver Marking Act ("National Stamping Act") pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because the claims arise under the laws of the United States and under an Act of Congress.

4.      The Court further has subject matter jurisdiction over this matter because this civil action arises in part under the Trademark Laws of the United States, 15 U.S.C. §1051 *et seq*.

This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), and 28 U.S.C. § 1338(b) (pendent unfair competition claims).

5.     The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to the state of Illinois, and Plaintiff's claims arise from those activities. Defendants targeted business activities towards consumers in Illinois, sold to consumers in Illinois products that infringe James Avery's copyrights and that bear infringing and counterfeit versions of James Avery's federally registered trademarks without authorization, and shipped those same counterfeit products to consumers in Illinois. Defendants targeted consumers in Illinois and committed these illicit acts through e-commerce stores in multiple online marketplaces.  In doing so, each of the Defendants committed, or facilitated the commission of, tortious acts in interstate commerce, including in Illinois, and has wrongfully caused Plaintiff substantial injury in Illinois.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Northern District of Illinois, and because each of the Defendants is subject to personal jurisdiction in this district.

## II. <u>PRELIMINARY STATEMENT</u>

7.     This is an action for copyright infringement pursuant to 17 U.S.C. § 501 of the Copyright Act; violations of the National Stamping Act, 15 U.S.C. § 291 *et seq.*; infringement of Plaintiff's trademarks under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); federal counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and for substantial and related claims of common law trademark infringement,

unfair competition, and false designation of origin, as well as unjust enrichment, all arising from the Defendants' unauthorized use of James Avery's copyrights and trademarks in connection with the marketing, advertising, promotion, offering, and providing of Defendants' counterfeit products.

8.      This action has been filed by James Avery to combat e-commerce store operators who trade upon James Avery's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed jewelry and other goods that use infringing and counterfeit versions of James Avery's federally registered trademarks and that infringe James Avery's valid and registered copyrights (the "Counterfeit James Avery Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit James Avery Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions and/or occurrences.

9.      James Avery has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and through Defendants' infringement of James Avery's copyrights.  James Avery seeks immediate and permanent injunctive relief, and monetary relief.

### III.  PARTIES

### A.      Plaintiff James Avery Craftsman, Inc.

10.      Plaintiff James Avery Craftsman, Inc. is a Texas corporation with its principal place of business in Kerrville, Texas.

11.     For over 70 years, James Avery has been continuously engaged in the business of creating, designing, manufacturing, marketing, and selling original and high-quality jewelry designs.  James Avery sells these original designs under its trademarks.

12.     James Avery operates numerous retail stores across the United States and sells its jewelry directly to consumers nationwide through its websites. It also maintains wholesale agreements with national retailers operating in Illinois, including Dillard's, Inc. and Von Maur, allowing for product distribution through third-party stores and websites.

13.     James Avery's jewelry designs are original works of authorship created by James Avery.  The designs constitute copyrightable subject matter under U.S. copyright law.

**B.     The Defendants**

14.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15.     Upon information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores on different marketplaces under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

4

## IV.  FACTUAL BACKGROUND

**A.    James Avery's Copyrighted Works**

16.    James Avery has complied in all respects with Title 17 of the United States Code, and all other laws governing copyrights, and thereby has secured the exclusive rights and privileges in and to the copyrights of numerous designs and has received from the Register of Copyrights of the United States Copyright Office over 4,000 Certificates of Copyright Registrations covering its original designs (collectively, the "Copyrighted Works").  Certificates of Copyright Registration for the Copyrighted Works are publicly available through the United States Copyright Office.  The Certificates of Copyright Registration for the Copyrighted Works are valid and enforceable, and all rights, title, and interest in and to the Copyrighted Works belong solely to James Avery.  **Exhibit 1** attached hereto and incorporated by reference, presents a table with side-by-side visual comparisons of Counterfeit James Avery Products sold by Defendants and the corresponding authentic James Avery Copyrighted Works and their associated U.S. Copyright Registration Numbers.  The Counterfeit James Avery Products identified in **Exhibit 1** are just a portion of the various Counterfeit James Avery Products made and sold by Defendants.  The actual scope of Counterfeit James Avery Products made and sold by Defendants is vast in scale and variety.

17.    James Avery has sold and published jewelry incorporating the Copyrighted Works in accordance with the Copyright Act, including 17 U.S.C. § 401.

**B.    James Avery's Trademarks**

18.    James Avery has sought and acquired numerous U.S. trademark registrations, including the following:

| US Reg. No. | Mark | Goods/Services |
|---|---|---|
| Reg. No. 1094375<br><br>Filed: Aug. 11, 1977 | Design Mark: | Int'l Class 14: Jewelry, Medals and Medallions.<br><br>First Use in Commerce: Dec. 1954 |
| Reg. No. 1422771<br><br>Filed: Feb. 20, 1986 | Word Mark: "JAMES AVERY" | Int'l Class 14: Jewelry.<br><br>First Use in Commerce: Sept. 05, 1985 |
| Reg. No. 4510674<br><br>Filed: Aug. 30, 2013 | Design Mark: | Int'l Class 14: Jewelry.<br><br>First Use in Commerce: 1956 |
| Reg. No. 1045381<br><br>Filed: Sept. 16, 1975 | Word Mark: "AVERY" | Int'l Class 14: Jewelry.<br><br>First Use in Commerce: 1954 |
| Reg. No. 1046775<br><br>Filed: Sept. 16, 1975 | Word Mark: "AVERY" | Int'l Class 14: Coins, Medals and Medallions.<br><br>First Use in Commerce: 1954 |

True and correct copies of the United States Registration Certificates for the above-listed AVERY Trademarks are attached hereto as **Exhibit 2**. The above federally registered and common law trademarks are hereafter referred to as the "James Avery Marks" or the "Marks."

19.     Since the respective dates of first use for the James Avery Marks, James Avery has continuously, extensively, and exclusively used the Marks in connection with the promotion of its jewelry business. As a result, customers and the general public have come to associate the James Avery Marks with James Avery and the high-quality jewelry sold by James Avery and the high-quality customer services provided by James Avery. The James Avery Marks have acquired distinctiveness as a result of James Avery's continuous and long-term use of the James Avery Marks in commerce.

6

20.     The James Avery Marks are distinctive when applied to authentic James Avery products and signify to the purchaser that the products come from James Avery and are manufactured to James Avery's quality.  James Avery has ensured that authentic products bearing the James Avery Marks are manufactured to the highest quality standards.

21.     James Avery has a large physical and online presence.  James Avery advertises and displays the James Avery Marks in its company-owned brick-and-mortar stores throughout five states and through its wholesale accounts with national retailers, which collectively represent hundreds of stores throughout thirty states.  James Avery also advertises and displays the James Avery Marks in physical catalogs and online through its website www.jamesavery.com, as well as through the websites of its national retailers.  James Avery also advertises and displays the James Avery Marks through its large social media presence, which includes TikTok, Facebook, Pinterest, Reddit, YouTube, and Instagram.

22.     James Avery has expended substantial time and sums of money in promoting its goods and services in connection with the James Avery Marks.  The products and services offered by James Avery under the James Avery Marks are of high quality, and customers have come to associate these high-quality products and services with James Avery.  As a result of James Avery's expenditures and efforts, the James Avery Marks have come to signify the high quality of the products designated by the Marks and have acquired incalculable distinction, reputation, and goodwill belonging exclusively to James Avery.

C.      **Defendants' Infringement of the Copyrighted Works and the James Avery Marks**

23.     Defendants have infringed the Copyrighted Works by manufacturing, publishing, copying, distributing, advertising, selling, and/or placing on the market for sale jewelry that improperly incorporates the designs of the Copyrighted Works, without permission or

7

authorization from James Avery.  Upon information and belief, Defendants have infringed and continue to infringe the Copyrighted Works through marketing and sales of Counterfeit James Avery Products through Defendants' websites, social media accounts, and other online or e-commerce marketplaces. Further, and upon information and belief, Defendants have marketed and sold Counterfeit James Avery Products through wholesale distributors and third-party vendors.  Specifically, Defendants advertised, sold, and marketed jewelry incorporating the Copyrighted Works.

24.     Defendants had access to James Avery's Copyrighted Works and incorporated the Works into Defendants' Counterfeit James Avery Products.  Defendants did not have authorization or permission from James Avery to incorporate James Avery's Copyrighted Works into the Counterfeit James Avery Products.

25.     Defendants have also promoted and sold the Counterfeit James Avery Products through Defendants' websites, social media accounts, and other online or e-commerce marketplaces using trademarks that are identical or confusingly similar to the James Avery Marks.

26.     The infringing designs and/or logos used by Defendants in the sale and promotion of their Counterfeit James Avery Products are confusingly similar to the James Avery Marks and would lead consumers to believe that there is some affiliation between Defendants and James Avery, when in fact there is no such affiliation.  To the contrary, Defendants and James Avery are competitors in the retail jewelry industry.

27.     Based on this aforementioned evidence, Defendants are attempting to trade off the goodwill of James Avery and the James Avery Marks.

28.     Upon information and belief, Defendants have profited through the willful and intentional infringement of James Avery's Copyrighted Works and/or the James Avery Marks.

29.     Plaintiff has not licensed or authorized Defendants to use the Copyrighted Works or any of the James Avery Marks, and none of the Defendants are authorized retailers of genuine James Avery products.

30.     Defendants unfairly compete with Plaintiff by marketing and selling the Counterfeit James Avery Products under names that are similar to authentic James Avery's Copyrighted Works.  **Exhibit 1** attached hereto and incorporated by reference, presents a table with side-by-side visual comparisons of certain Counterfeit James Avery Products sold by Defendants, including those bearing the James Avery Marks, and the corresponding authentic James Avery Copyrighted Works and their associated U.S. Copyright Registration Numbers, along with the product names used by Defendants, which in several instances closely resemble those used for the authentic James Avery items.

31.     Additional Images depicting examples of the Counterfeit James Avery Products as they are offered for sale in online marketplaces, including specific evidence of their infringement of the James Avery Copyrighted Works and the James Avery Marks, are shown in **Exhibit 3**.  Comments and reviews from purchasers of the Counterfeit James Avery Products acknowledge their visual similarity to authentic James Avery products.

32.     Upon information and belief, Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. These e-commerce stores appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit

cards and third-party payment services, including PayPal and AliPay. These e-commerce stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

33. Upon information and belief, Defendants are acting in concert with each other in the marketing and sale of the Counterfeit James Avery Products. Upon information and belief, at least one of the Defendants manufactures, distributes, or otherwise provides the Counterfeit James Avery Products to one or more of the other Defendants, who in turn traffic in, sell, resell, and/or offer for sale the Counterfeit James Avery Products through different trade channels, including online marketplaces.

34. Defendants have made sales to Illinois residents by establishing and operating e-commerce stores that target U.S. consumers, including those in Illinois, using one or more seller aliases, shipping to the U.S., including to Illinois, accepting payment in U.S. dollars and/or funds from U.S. bank accounts and have sold Counterfeit James Avery products to residents of Illinois.

35. To confirm that Defendants' Counterfeit James Avery Products use James Avery's Copyrighted Works and the James Avery Marks, Plaintiff purchased samples of the Counterfeit James Avery Products from each Defendant through the respective online marketplaces where each Defendant sold such Products. The Counterfeit James Avery Products purchased from Defendants were shipped to a location within this District. Copies of the corresponding order information are attached hereto as **Exhibit 4** and incorporated herein by reference.

**D.    Defendants' Violations of the National Stamping Act**

36. Certain Counterfeit James Avery Products marketed and sold by Defendants also include markings indicating that those Counterfeit James Avery Products are made of at least

10

92.5% by weight of silver. Additionally, other Counterfeit James Avery Products, while not marked, are sold as "Sterling Silver." The law requires that a product be 92.5% by weight of silver in order to designate the item "Sterling Silver."

37.    Upon information and belief, those Counterfeit James Avery Products are shoddy, inferior copies of James Avery's authentic products and are not made of 92.5% by weight of silver. As a result, Defendants have violated Sections 1 and 3 of the National Stamping Act. 15 U.S.C. §§ 294, 296.

38.    As creator, manufacturer, and seller of its Copyrighted Works that are manufactured using authentic sterling silver comprising 92.5% by weight of silver, and as discussed in greater detail above, James Avery is a direct competitor of Defendants. As a competitor, James Avery has been injured by Defendants' violations of Sections 1 and 3 of the National Stamping Act. See 15 U.S.C. § 298(b). For example, consumers seeking sterling silver jewelry products in the above-described designs are likely to be misled into buying certain Counterfeit James Avery Products, believing the Counterfeit James Avery Products comprise sterling silver (at least 92.5% by weight of silver), instead of buying the corresponding genuine, sterling silver James Avery products.

39.    Defendants have engaged in unfair competition with James Avery by violating the National Stamping Act by mismarking the above-listed Counterfeit James Avery Products as 92.5% by weight of silver, and by marking the Counterfeit James Avery Products with James Avery's trademarks without authorization. James Avery is an ethical company that produces its sterling silver jewelry itself and properly identifies its sterling silver jewelry in accordance with applicable laws. James Avery cannot fairly compete with Defendants when James Avery is continuing to maintain the high quality of its silver jewelry and mark it appropriately, whereas

Defendants are using inferior and insufficiently pure materials to make their Counterfeit James Avery Products.

**E.      James Avery is Entitled to Injunctive and Monetary Relief**

40.      James Avery has been and continues to be damaged by the aforementioned acts in a manner that cannot be fully measured or compensated in economic terms.  Defendants have wrongly profited from infringing the Copyrighted Works and the James Avery Marks, and Defendants have caused losses to James Avery and unfairly competed with James Avery, including by mismarking inferior counterfeit products as "Sterling Silver."

41.      Upon information and belief, Defendants have and will continue to engage in such unauthorized activities in interstate commerce and in this District. James Avery has no adequate remedy at law and will suffer irreparable harm and damages as a result of Defendants' actions, in an amount presently incalculable.

42.      Unless Defendants are restrained and enjoined by this Court from continuing to infringe the Copyrighted Works and the James Avery Marks and violating the National Stamping Act, James Avery's injuries will continue to occur.

43.      Defendants have profited and are continuing to profit through their bad faith conduct, intentional infringement of the Copyrighted Works and the James Avery Marks, and from their violations of the National Stamping Act. Defendants' illicit profits are in an amount yet to be determined.

<u>**COUNT I**</u>
**Copyright Infringement, 17 U.S.C. § 501**

44.      James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

45.     The Copyrighted Works are original works of authorship of James Avery. James Avery is the lawful owner and holder of the federal copyright registrations for the Copyrighted Works.

46.     Defendants' marketing and sale of jewelry incorporating the Copyrighted Works, or derivatives of the Copyrighted Works, was unauthorized, intentional and willful, and infringed James Avery's copyrights.

47.     Defendants' willful and unauthorized copying, production, distribution, sale and/or display of the Counterfeit James Avery Products has resulted in wrongful profits to Defendants, the full extent of which is as yet undetermined, and losses to James Avery, the full extent of which is as yet undetermined.

48.     As a result of Defendants' willful infringement of the Copyrighted Works, Defendants have also diminished the value of James Avery's goodwill and reputation, resulting in monetary damage and irreparable injury to James Avery.

49.     As a result of Defendants' willful infringement of the Copyrighted Works, Defendants have irreparably injured James Avery's rights in the Copyrighted Works and, unless enjoined by this Court, will continue to do so.

50.     Under 17 U.S.C. § 505, James Avery seeks an award of its reasonable attorney's fees based on Defendants' willful copyright infringement and bad faith conduct.

**<u>COUNT II</u>**
**Trademark Infringement Under Section 32 of the Lanham Act, 15 U.S.C. § 1114**

51.     James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

52.     Based on the activities described above, Defendants have infringed and will continue to infringe the James Avery Marks, which are federally registered under Section 32 of

the Lanham Act, 15 U.S.C. § 1114. Defendants' use of marks confusingly similar to the James Avery Marks is likely to cause confusion, or to cause mistake, or to deceive.

53.     Upon information and belief, Defendants' infringing conduct has been performed with actual knowledge of James Avery's rights, and/or is in bad faith, and with willful and deliberate intent to trade on James Avery's substantial recognition, reputation, and goodwill.

54.     James Avery is entitled to and will seek injunctive relief, a recovery of Defendants' profits, actual damages, enhanced profits and damages, costs, and James Avery's reasonable attorney's fees under at least 15 U.S.C. §§ 1114(1), 1116, and 1117.  As a result of Defendants' bad faith conduct and willful infringement of the James Avery Marks, this is an exceptional case.

55.     Defendants have irreparably injured James Avery's rights in the James Avery Marks and, unless enjoined by this Court, will continue to do so.

**COUNT III**
**Counterfeiting Under Section 32 of the Lanham Act, 15 U.S.C. § 1114**

56.     James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

57.     Defendants are engaged in federal counterfeiting under the Federal Trademark Act, 15 U.S.C. §§ 1051-1127 and 15 U.S.C. §§ 1114, 1116(d) and 1117.

58.     Defendants have used a spurious designation that is identical with, or substantially indistinguishable from, the James Avery Marks, and thus are engaged in trademark counterfeiting.

59.     Defendants have knowingly used counterfeit marks in connection with the marketing and sale of goods identical to Plaintiff's goods without Plaintiff's consent or

authorization, in a manner which is likely to cause confusion, to cause mistake, or to deceive as to source or origin among purchasers and/or users of those goods.

60.     Defendants' unauthorized use of the James Avery Marks is likely to mislead and cause customers and/or the general public to believe that the Defendants' goods are produced by or under the authority of Plaintiff, when such is not the case.

61.     Plaintiff's goodwill in its name and the James Avery Marks will be irreparably harmed if Defendants continue their unauthorized acts.

62.     Pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b), Plaintiff is entitled to recover treble profits or damages, whichever amount is greater, as well as pre-judgment interest and reasonable attorney's fees.

63.     Pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), Plaintiff is entitled to recover, in lieu of actual damages and profits under § 1117(a), statutory damages for Defendants' use of counterfeit versions of Plaintiff's Marks in connection with the marketing and sale of goods identical to Plaintiff's goods. Plaintiff reserves its right to elect an award of statutory damages of "(1) not less than $1000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).

64.     Plaintiff has been damaged by Defendants' actions in an amount which is as yet undetermined. If Defendants' acts are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law.

## <u>COUNT IV</u>
**Trademark Infringement Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

65.     James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

66.     Defendants' use of one or more marks confusingly similar to the James Avery Marks violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing the James Avery Marks. Defendants' use of marks confusingly similar to the James Avery Marks is likely to cause confusion, mistake or deception as to the affiliation, connection, and/or association of Defendants with James Avery and/or as to the origin, sponsorship, and/or approval of Defendants' goods and/or services.

67.     The James Avery Marks are entitled to protection under the Lanham Act. James Avery has extensively and continuously promoted and used its trademarks in Illinois and elsewhere. Through that extensive and continuous use, the James Avery Marks have become a well-known indicator of the origin and quality of James Avery products and services. The James Avery Marks have also acquired substantial secondary meaning in Illinois and elsewhere.

68.     Upon information and belief, Defendants' infringing conduct has been performed with actual knowledge of James Avery's rights, and/or in bad faith, and with willful and deliberate intent to trade on James Avery's substantial recognition, reputation, and goodwill.

69.     James Avery is entitled to and will seek injunctive relief, a recovery of Defendants' profits, actual damages, enhanced profits and damages, costs, and James Avery's reasonable attorney's fees under at least 15 U.S.C. §§ 1116, 1117, and 1125(a).  As a result of Defendants' bad faith conduct and willful infringement of the James Avery Marks, this is an exceptional case.

70.     Defendants have irreparably injured James Avery's rights in the James Avery Marks and, unless enjoined by this Court, will continue to do so.

**COUNT V**
**Unfair Competition and False Designation of Origin**
**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

71.     James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

72.     Defendants' use of one or more marks confusingly similar to the James Avery Marks, in direct competition with James Avery, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitutes unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to James Avery through their use of one or more marks confusingly similar to the James Avery Marks, and because such use is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of Defendants and their products and/or services, at least by creating the false and misleading impression that Defendants' use of the infringing marks is authorized by or otherwise associated with James Avery.

73.     The James Avery Marks are entitled to protection under the Lanham Act. James Avery has extensively and continuously promoted and used its trademarks in Illinois and elsewhere. Through that extensive and continuous use, the James Avery Marks have become a well-known indicator of the origin and quality of James Avery products and services. The James Avery Marks have also acquired substantial secondary meaning and distinctiveness in Illinois and elsewhere.

74.     Upon information and belief, Defendants' infringing conduct has been performed with actual knowledge of James Avery's rights, and/or in bad faith, and with willful and deliberate intent to trade on James Avery's substantial recognition, reputation, and goodwill.

75.     James Avery is entitled to injunctive relief, and James Avery is also entitled to and will seek recovery of at least Defendants' profits, James Avery's actual damages, enhanced damages, costs, and reasonable attorney's fees under at least 15 U.S.C. §§ 1116, 1117, and 1125(a).

**COUNT VI**
**Violation of the National Stamping Act**

76.     James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

77.     Defendants prepared Counterfeit James Avery Products by copying authentic James Avery products.

78.     Defendants intentionally and knowingly marked the Counterfeit James Avery Products with the designation "S925" and/or marketed them as "Sterling Silver," which indicates that the products should be at least 92.5% silver by weight.

79.     Upon information and belief, these Counterfeit James Avery Products are not made of 92.5% by weight of silver and do not comprise authentic sterling silver.

80.     Defendants' intentional and/or knowing mismarking of the Counterfeit James Avery Products violates the National Stamping Act at 15 U.S.C. §§ 294–298 and constitutes unfair competition against James Avery, as James Avery is an ethical jewelry maker that follows the National Stamping Act by properly marking its products according to their quality. James Avery cannot compete with Defendants' inferior Counterfeit James Avery Products that are intentionally mismarked as comprising 92.5% by weight of silver.

81.     Defendants and James Avery are manufacturing, marketing, and selling products made from the same James Avery designs bearing markings or other statements that indicate the products are made of sterling silver (*i.e.*, at least 92.5% by weight of silver) to the same

consumers in the same geographic regions. Defendants' intentional or knowing mismarking of the Counterfeit James Avery Products, in violation of the National Stamping Act, is likely to influence these consumers' purchasing decisions.

82.     Upon information and belief, Defendants are selling the mismarked Counterfeit James Avery Products in interstate commerce.

83.     As an ethical manufacturer of authentic sterling silver jewelry, James Avery has been injured and is likely to continue to be injured as a result of Defendants' mismarking of the Counterfeit James Avery Products as genuine sterling silver jewelry.

84.     James Avery is entitled to injunctive and monetary relief, including its reasonable attorney's fees, pursuant to 15 U.S.C. § 298(b).

**COUNT VII**
**Common Law Trademark Infringement**

85.     James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

86.     Defendants' acts complained of above constitute common law trademark infringement.

87.     Upon information and belief, Defendants' infringing conduct has been performed with actual knowledge of James Avery's rights, and/or in bad faith, and with willful and deliberate intent to trade on James Avery's substantial recognition, reputation, and goodwill.

88.     James Avery is entitled to injunctive relief, and James Avery is also entitled to recover at least its actual damages, Defendants' profits, punitive damages, costs, and reasonable attorney's fees.

<u>**COUNT VIII**</u>
**Common Law Unfair Competition**

89.     James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

90.     Defendants' acts complained of above constitute unfair competition under common law, at least because the acts of Defendants have allowed them to obtain an unfair advantage as compared to James Avery.

91.     James Avery's continuous promotion and creation of goodwill in the James Avery Marks required extensive time, labor, effort, skill, and money. Defendants have wrongfully used and are wrongfully using marks confusingly similar to the James Avery Marks in competition with James Avery and have gained and are gaining a wrongful benefit by undue advantage. Defendants have not been burdened with the expenses incurred by James Avery. Defendants are obtaining the resulting benefits for their own business and/or products.

92.     Upon information and belief, Defendants' conduct has been performed with actual knowledge of James Avery's rights, and/or in bad faith, and with willful and deliberate intent to trade on James Avery's substantial recognition, reputation, and goodwill.

93.     James Avery is entitled to injunctive relief, and James Avery is also entitled to recover at least James Avery's damages, Defendants' profits, punitive damages, costs, and reasonable attorney's fees.

<u>**COUNT IX**</u>
**Common Law False Designation of Origin**

94.     James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

95.     Defendants' use of the James Avery Marks constitutes a false designation of origin which is likely to deceive and, upon information and belief, has deceived the public,

customers, and prospective customers into believing that Defendants' offerings are associated with, authorized by, or affiliated with those of James Avery, and as a consequence, are likely to divert or have diverted customers away from James Avery.

96.     Upon information and belief, Defendants continue to attempt to capitalize on the good name, reputation, and goodwill of James Avery.

97.     Defendants' acts alleged herein constitute use of a word, term, name, symbol, and a false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' products with James Avery, as to the origin, sponsorship, or approval of Defendants' goods, services, and commercial activities by James Avery.

98.     Defendants' acts misrepresent the nature, characteristics, qualities, or origin of Defendants' goods, services, or commercial activities.

99.     James Avery has been damaged as a result of Defendants' actions.

100.    Upon information and belief, Defendants' conduct has been performed with actual knowledge of James Avery's rights, and/or in bad faith, and with willful and deliberate intent to trade on James Avery's substantial recognition, reputation, and goodwill.

101.    James Avery is entitled to injunctive relief, and James Avery is also entitled to recover at least Defendants' profits.

## COUNT X
### Unjust Enrichment

102.    James Avery realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

103.     Defendants' acts complained of above constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at James Avery's expense and operated with an undue advantage.

104.     James Avery's continuous promotion and creation of goodwill in the James Avery Marks required extensive time, labor, effort, skill, and money. Defendants have wrongfully used and are wrongfully using marks confusingly similar to the James Avery Marks in competition with James Avery and have gained and are gaining a wrongful benefit by undue advantage. Defendants have not been burdened with the expenses incurred by James Avery. Defendants are obtaining the resulting benefits for their own businesses and products.

105.     Upon information and belief, Defendants' conduct has been performed with actual knowledge of James Avery's rights, and/or in bad faith, and with willful and deliberate intent to trade on James Avery's substantial recognition, reputation, and goodwill.

106.     James Avery is entitled to injunctive relief, and James Avery is also entitled to recover at least Defendants' profits.

## JURY DEMAND

107.     Plaintiff demands trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, James Avery Craftsman, Inc. respectfully requests that the Court award judgment against Defendants, and grant James Avery the following relief:

a.  That Defendants, and all agents or persons and entities in active concert or participation with them, be preliminarily and permanently enjoined from:

  i.  producing, utilizing, copying, reproducing, distributing, selling, or displaying materials that infringe any of James Avery's Copyrighted Works;

    ii.  infringing James Avery's registered James Avery Marks; and

    iii.  using the terms "AVERY," "JAMES AVERY," or any other word, symbol,

        phrase, or term similar to the James Avery Marks, including any reproductions,

        reproductions, counterfeit copies, or colorable imitations of the James Avery

        Marks, in any manner in connection with the distribution, promotion, marketing,

        advertising, offering for sale, or sale of any product;

b.  That Defendants be ordered to immediately surrender to James Avery all products in

    Defendants' possession, custody or control that:

    i.  infringe the Copyrighted Works,

    ii.  infringe the James Avery Marks,

    iii.  are unauthorized duplicates of any James Avery products and that violate the

        National Stamping Act, and/or

    iv.  are otherwise unauthorized duplicates of any James Avery products;

c.  Entry of an Order pursuant to 15 U.S.C. § 1116 providing for the seizure of any of

    Defendants' products that are counterfeits of James Avery's products, as well as any

    records documenting the manufacture, sale, or receipt of things involved in any of

    Defendants' counterfeiting violations;

d.  Entry of an Order that, upon Plaintiff's request, those with notice of the injunction,

    including, without limitation, any online marketplace platforms such as eBay,

    AliExpress, Alibaba, Amazon, Walmart, Global Sources, Etsy, Wish.com, Temu,

    DHgate, Shein, and TikTok, shall disable and cease displaying any advertisements used

    by or associated with Defendants in connection with the sale of counterfeit and

    infringing goods using the Copyrighted Works, and/or the James Avery Marks;

e. That Defendants be required to provide to James Avery the names and addresses of any other sellers and/or manufacturers of the Counterfeit James Avery Products and all records, invoices, shipping manifests, purchase orders, inventory records, and correspondence between Defendants and those entities;

f. That Defendants be ordered to provide complete accountings for any and all monies, profits, gains, and advantages derived by Defendants from their importing, exporting, advertising, marketing, promoting, distributing displaying, offering for sale, sale, and/or otherwise dealing in their infringing conduct;

g. That an asset freeze or constructive trust be imposed over any and all monies, profits, gains, and advantages in Defendants' possession that rightfully belong to Plaintiff;

h. Actual, direct, and consequential damages, lost profits, and treble damages, at Plaintiff's election in accordance with applicable statutes;

i. Statutory damages, at Plaintiff's election in accordance with applicable statutes;

j. Exemplary damages;

k. Pre-judgment interest and interest on the judgment;

l. Attorney's fees, expenses, and costs; and

m. Such other and further relief to which James Avery may show itself to be justly entitled, at law or in equity.

Dated:  January 9, 2026                          Respectfully submitted,

/s/ Michael J. Word_____
Michael J. Word (ARDC #6297998)
Diego F. Freire (ARDC #6326918)
DYKEMA GOSSETT PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 876-1700

MWord@dykema.com
DFreire@dykema.com

J. Daniel Harkins (*pro hac vice* forthcoming)
Michael P. Collier (*pro hac vice* forthcoming)
DYKEMA GOSSETT PLLC
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500 (Phone)
(210) 226-8395 (Fax)
DHarkins@dykema.com
MCollier@dykema.com

*Attorneys for Plaintiff James Avery Craftsman, Inc.*